-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                                                    :
TWENTIETH CENTURY FOX FILM                                          :
CORPORATION,                                                         :
                                                                    :
                              Plaintiff,                            : **COMPLAINT**
                                                                    :
              -against-                                             :
                                                                    :
WHITE PLAINS DEVELOPMENT, LLC; AARON S.                             :
WEXLER, and JOHN OR JANE DOES 1-10                                  :
                                                                    :
                              Defendants.                           :
--------------------------------------------------------------------X

Plaintiff Twentieth Century Fox Film Corporation ("Fox"), by and through its attorneys, Loeb &

Loeb LLP, as and for their Complaint against White Plains Development, LLC ("White Plains

Development"), Aaron S. Wexler ("Wexler"), and John and Jane Does 1-10 (collectively,

"Defendants"), alleges as follows:

## NATURE OF ACTION

1.    This action arises out of a short-term location agreement (the "Location

Agreement") entered into between Fox[1] and White Plains Development, through which Fox

contracted to use certain real property located at 440 Hamilton Avenue, White Plains, New York

(the "Property"), for the purpose of filming a theatrical motion picture.

2.    Fox paid White Plains Development $300,000 to use this property – which White

Plains Development purported to own – for a period of less than three months.  Fox additionally

provided White Plains Development a security deposit of $100,000, which was to be returned to

Fox within five days of Fox's vacating the Property.

---

[1] The contracting entity was Twentieth Century Fox, a unit of Fox.

1

-

3.      Although Fox fully vacated the property as of July 31, 2017, White Plains Development kept Fox's security deposit in full, without justification.  Under the Location Agreement, there was only one circumstance in which White Plains Development was permitted to retain any portion of the Security Deposit, and that was where White Plains Development submitted to Fox, within 48 hours of Fox's vacating the Property, a detailed list of any and all claimed damages to the Property.

4.      White Plains Development did not submit such an itemized damage claim to Fox within the required time period.  This failure alone constitutes a complete relinquishment under the Location Agreement of any right on the part of White Plains Development to deduct a sum from Fox's security deposit as restitution.

5.      Over a month passed before White Plains Development submitted any written list to Fox of its claims of alleged damages to the Property.  Once Fox received White Plains Development's purported damages claims, Fox determined that these claims were either illegitimate or fabricated.  It was clear that these claims were merely a pretense for White Plains Development to steal Fox's money.

6.      White Plains Development submitted their alleged damages claims in September 2017.  After that, White Plains Development abruptly ceased communication with Fox and has still failed to return Fox's $100,000 security deposit, compelling the present action.

7.      On information and belief, White Plains Development is owned by Wexler and possible other John or Jane Does whose identity as of yet remains unknown to Fox.  Wexler (potentially along with these other individuals) has emptied White Plains Development of all assets, including the security deposit paid by Fox, rendering White Plains Development a mere shell corporation.  Wexler has therefore used White Plains Development as a vehicle to commit

2

-

fraud, chiefly by representing that White Plains Development owns property that it does not in fact own and then hiding behind the corporate form to evade debts as they come due. This Court should pierce the corporate veil of White Plains Development and hold Wexler and any other owners of White Plains Development personally liable for the damages Fox has incurred.

## PARTIES

8.      Plaintiff Fox is a California corporation with its principal place of business in Los Angeles, California.

9.      Defendant White Plains Development is a New York limited liability company registered to conduct business in the State of New York. Upon information and belief, its principal place of business is 1000 Central Avenue, Woodmere, New York 11598.

10.      Defendant Aaron S. Wexler is a citizen of Nassau County, New York. Upon information and belief, Wexler resides at 45 Willow Road, Woodmere, New York 11598, and is at least one of the owners of White Plains Development.

11.      The identities of Defendants John or Jane Does 1-10 are not presently known. Upon information and belief, John or Jane Does are individuals who own White Plains Development, possibly in conjunction with Wexler. The Complaint will be amended to include the names of such individuals and entities when identified.

## JURISDICTION AND VENUE

12.      This Court has jurisdiction over Defendants pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this

-

District and a substantial part of the property that is the subject of this action is situated in this

District.

## FACTUAL ALLEGATIONS

**The Location Agreement Between Fox and White Plains Development**

14.      Throughout much of 2017, Fox was filming a theatrical motion picture then referred

to by the working title "NOR'EASTER."[2]

15.      On or about March 30, 2017, Fox, through its sub-unit Twentieth Century Fox, and

White Plains Development entered into the Location Agreement (a copy of which is annexed as

Exhibit A hereto) by which Fox was permitted use of the Property, in connection with "[p]repping,

filming and wrapping of [NOR'EASTER] along with related motion picture activities."

16.      The Location Agreement defined White Plains Development as the "Owner."

Under Paragraph 11, the "Owner" "represent[ed], warrant[ed] and agree[d] that" it was "the sole

and exclusive legal owner of the Property and ha[d] the full right, power and authority to grant

Fox the rights granted to Fox hereunder."  *See* Ex. A at 4.

17.      Wexler signed the Location Agreement on behalf of White Plains Development.

He listed the address of White Plains Development as 1000 Central Avenue, Woodmere, New

York 11598.  *See id*. at 5.

18.      The Location Agreement provided that the Property would be available for use by

Fox from approximately April 10, 2017 until approximately June 30, 2017 (the "Term").  *See id.*

at 1 (Par. 4).  Fox was additionally permitted access to the Property for up to a four week period

---

[2]  This motion picture was the Oscar-nominated *The Post*, directed by Steven Spielberg and
starring Meryl Streep and Tom Hanks, and released in the United States in December 2017.

-

beyond the Term for the purposes of striking sets and storing Fox's own property.  *See id*.  Under the Location Agreement, Fox therefore had until July 31, 2017 to fully vacate the Property.

19.     As complete and full payment for Fox's right to use the Property, the Location Agreement specified that Fox would pay White Plains a location fee totaling $300,000, paid in three installments of $100,000.  *See id*. at 1 (Par. 5(a)).

20.     Fox paid each of these installments in full and by the dates specified in the Location Agreement.

21.     The Location Agreement also provided that once the Location Agreement was executed by Fox and White Plains Development, Fox would provide to White Plains Development a "*refundable* security deposit in the amount of $100,000" (the "Security Deposit") (emphasis supplied).  *See id*. at 1 (Par. 5(b)).

22.     The Location Agreement obligated White Plains Development to place the Security Deposit into a segregated bank account.  *See id.* at 1-2 (Par. 5(b)).

23.     The Location Agreement further provided that White Plains Development was to refund the Security Deposit to Fox within five days after Fox vacated the Property.  *See id.* at 2 (Par. 5(b)).

24.     There was *one* limited exception in the Location Agreement to White Plains Development's obligation to return the Security Deposit promptly: where Fox had caused "damage to the Property."  As defined in the Location Agreement, "damage" explicitly did not include: (i) "reasonable wear and tear"; and (ii) "certain adjustments and renovations" that Fox might make to the Property (the "Renovations").  *See id.* at 2 (Par. 6(a)).  In fact, regarding any potential Renovations, the Location Agreement further specified that "the Property is scheduled to be converted into a residential property and therefore Owner acknowledges and accepts that Fox is

5

-

under no obligation to, and will not, remove its Renovations at the completion of Fox's use of the Property." *See id.*   As relevant here, the Location Agreement expressly specified that such Renovations could include:

- Re-routing the HVAC ceiling ducts on the tenth floor of the Property;

- Permanently removing non-loadbearing office walls on the northwest and southwest corners of the tenth floor of the Property;

- Installing additional fluorescent light fixtures and/or ceiling tiles on the tenth floor of the Property;

- Painting the walls on the tenth floor of the Property; and

- Connecting to the house power with the supervision of personnel from White Plains Development.

*See id.* at 6 (Addendum "A").

25.     If White Plains Development believed that Fox had damaged the Property, White Plains Development was obligated to submit in writing to Fox a detailed list of any and all purported damages to the Property that White Plains Development was alleging Fox to have caused (the "Property Damage Claim").  *See id.* at 2 (Par. 6(b)).  Under the Location Agreement, such a Property Damage Claim was due to Fox *within 48 hours* after the later of either the end of the Term or Fox's vacating the Property (which Fox was obligated to do by July 31, 2017).  *See id.* at 2-3 (Par. 6(b)).

26.     After submitting a Property Damage Claim, if any, White Plains Development was then obligated to allow Fox onto the Property to inspect and assess the damages alleged by the Property Damage Claim.  *See id.* at 3 (Par. 6(b)).

27.     If Fox acknowledged responsibility for any of the damages alleged in the Property Damage Claim, Fox could elect either to correct the damage or make restitution.  *See id.* at 2 (Par. 5(b)).  If Fox elected to make restitution, Fox and White Plains Development would agree on a

-

"mutually approved restitution amount." *See id.  Only then* was White Plains Development authorized to deduct such amount from the Security Deposit.

28.     Finally, where White Plains Development was authorized as per the procedure described *supra* ¶¶ 25-27 to deduct a mutually agreed upon amount from Fox's Security Deposit, White Plains Development was to refund the remaining amount of the Security Deposit to Fox and provide Fox with written substantiation of the costs paid, which would include, without limitation, actual and verified receipts.  *See id.*  Such refund and written substantiation were due within *five days* of Fox's electing to make restitution to White Plains Development.  *See id.*

29.     Subject to these detailed provisions in the Location Agreement, Fox paid White Plains Development the Security Deposit.

**Fox Completes Filming at the Property and Vacates the Property as Required by the Location Agreement**

30.     On June 14, 2017, approximately two weeks prior to the end date of the Term, Lauri Pitkus, Fox's Location Manager, emailed Wexler at the email address awexler@seventhavemanagement.com, along with several other individuals believed to be involved in the management of White Plains Development.  Pitkus informed Wexler that Fox was nearing the end of its filming at the Property.  She noted that Fox would like to continue to store sets and items until the end of July 2017, as explicitly permitted by the Location Agreement.  She then inquired as to whether Fox would additionally be permitted during that same time period to use the first floor of the Property as a holding area and to use the lot behind the Property for parking.

31.     Fox received no response to this June 14, 2017, communication from Wexler or any other individual at White Plains Development.

-

32.     Fox completed filming at the Property on June 15, 2017 (well in advance of the Term end date) and fully vacated the Property by July 31, 2017.

33.     Because Wexler never responded to Pitkus' June 14, 2017, communication, Fox never returned to the Property to use the first floor or to use the lot behind the Property.

**White Plains Development Fails To Return Fox's Security Deposit, or Comply With the Prescribed Procedure for Withholding Any Portion of the Security Deposit**

34.     As of August 4, 2017 – well over 48 hours after Fox had vacated the Property – Fox had not received a Property Damage Claim from White Plains Development.

35.     As of August 7, 2017 – five days after Fox had vacated the Property – White Plains Development had not refunded Fox's Security Deposit, as it was required to do under the Location Agreement if Fox did not receive a Property Damage Claim within 48 hours.

36.     On     August     18,     2017,     Pitkus     emailed     Wexler     at awexler@seventhavemanagement.com.  Pitkus wrote: "As a reminder, our Location Agreement states you were required to return our deposit within 5 day[s] of our vacating the premises or submit a Property Damage Claim within 48 hours of our departure.  We're over 2 weeks past these deadlines.  Can you please provide explanation for the delay in return of the [Security Deposit]?"

37.     Wexler responded that same day from awexler@seventhavemanagement.com, stating: "We're going to supply you the damage report shortly."

38.     As of September 1, 2017, Fox had not received a Property Damage Claim from White Plains Development.  Tara Singer, on behalf of Fox, then sent a formal letter to Wexler, both to the Property address in White Plains and to awexler@seventhavemanagement.com.  The letter explained that White Plains Development had had 48 hours after Fox vacated the Property to submit a Property Damage Claim to Fox.  Singer's letter further stated:

-

As such 48 hour period has expired with no claims of damage to the Property caused by Fox, and since the end of the extended term of the Location Agreement was July 31, 2017, the security deposit was due August 7, 2017.

Please forward a check in the amount of $100,000 (paid to the order of Twentieth Century Fox) to my attention . . . .

39.     Wexler responded to Singer's letter that same day, again from awexler@seventhavemanagement.com: "Due to summer vacation schedules etc, the list of the various damages was not yet completed.  It will be done next week after Labor Day."  Fox never agreed to such an extension or modification of the Location Agreement.

**White Plains Development Finally Sends Fox an Untimely and Fabricated List of "Damages" to the Property Allegedly Caused by Fox**

40.     On September 7, 2017 – long after the time period prescribed by the Location Agreement for providing a Property Damage Claim had expired – White Plains Development sent Fox, "a partial list of claims for damages and charges."

41.     This list of damages appeared to be generated in bad faith by White Plains Development as a means to unlawfully withhold Fox's Security Deposit.  Many of the alleged damages were simply fabricated.

42.     Moreover, many of damages alleged by White Plains Development were simply moot, given that the Property was scheduled for demolition.  Upon information and belief, the Property is currently being converted from an office building into a residential building with more than 200 rental units.

43.     On October 4, 2017, Fox responded to the claims of White Plains Development by letter (the "October 4 Letter," a copy of which is annexed as Exhibit B hereto).

44.     The October 4 Letter explained that White Plains Development had waived its right to collect restitution from Fox because it had not submitted a Property Damage Claim within the

-

required 48 hours of Fox's vacating the Property, and in fact, White Plains Development had delayed over a month in submitting any sort of claim to Fox at all.  As such, the October 4 Letter explained that White Plains Development was not entitled to deduct any sum of money from the Security Deposit as payment to White Plains Development.

45.     Though "academic" – because White Plains Development was contractually time-barred from seeking restitution – Fox explained that the damages claimed by White Plains Development were either: (a) not caused by Fox's use because they were apparent when Fox took possession of the Property; or (b) Renovations to the Property that were explicitly permitted under the Location Agreement.

46.     Though also not necessary due to White Plains Development's multiple breaches of the procedure prescribed by the Location Agreement, the October 4 Letter further addressed each of White Plains Development's meritless claims in detail, which included unjustified accusations that Fox had done the following to the Property:

- "Disconnect[ed] and rerout[ed] HVAC systems in a haphazard unprofessional manner that resulted in damages and unbalanced system's [sic] to many of the other floors" – to which Fox responded that it was permitted under the Location Agreement to re-rout the HVAC and that White Plains Development's own preferred vendor had facilitated this work.

- Caused "[s]ubstantial damages to walls in lobby's [sic], entryways and hallways" – to which Fox responded (once again) that it was permitted under the Location Agreement to both remove and paint walls and that when Fox was done using the Property, it had removed all temporary walls;

- Damaged "electrical conduits and systems resulting in power outages to other occupied spaces" – to which Fox explained that the only other tenant in the building, Entergy, confirmed to Fox that they did not incur any power outages; that Fox was permitted under the Location Agreement to connect to the house power with supervision by personnel of White Plains Development; and that such personnel never alerted Fox to any problems;

- Damaged the low voltage power system – to which Fox responded that the power system was not in working order when Fox took possession of the building;

10

-

- Removed ceiling tiles without restoring them – to which Fox responded (yet again) that it was permitted to remove ceiling tiles under the Location Agreement; and

- Left debris – an accusation that Fox both denied and noted as being baseless, given that Fox had vacated the building nearly two months prior.

47.     The balance of remaining claims (all time-barred) made by White Plains Development – including a claim that Fox failed to reimburse White Plains Development for "[h]eavy and reckless usage of electricity" – were simply unsubstantiated.

48.     Fox concluded the October 4 Letter by reiterating its demand for the full return of its $100,000 Security Deposit.

49.     White Plains Development never responded to the October 4 Letter.

50.     On February 21, 2018, Fox followed up with an additional letter that repeated the substance of the October 4 Letter and reiterated the demand for the return of the Security Deposit. White Plains Development has yet to respond to this letter or the October 4 Letter.

51.     On June 28, 2018, still having received no response from White Plains Development, Fox followed up with a final demand to White Plains Development for the return of the Security Deposit.

52.     Upon information and belief, the damages alleged by White Plains Development were nothing more than a pretense for it to keep money that rightfully belongs to Fox.

**White Plains Development Appears To Be a Shell Entity Used by Wexler (and Potentially Other Unknown Individuals) To Commit Fraud**

53.     Upon information and belief, White Plains Development is owned at least partly by Wexler, potentially in conjunction with other owners as of yet unknown to Fox.

54.     Although the Location Agreement expressly represents and warrants that White Plains Development was the owner of the Property, there are no public records establishing that

-

White Plains Development owned the Property at the time the Location Agreement was executed or anytime thereafter.

55.     Public records do establish that on or about November 10, 2016, two entities purchased the Property: American Equity Partners I LLC ("Equity I") and American Equity Partners II LLC ("Equity II").  Publish records further establish that, on or about November 22, 2017, 440 Hamilton Owner LLC purchased the Property from Equity I and Equity II.

56.     Upon information and belief, Wexler, along with potentially other unknown individuals, has transferred the Security Deposit and all other assets out of White Plains Development (the "Conveyance").  The Conveyance has stripped White Plains Development of any significant assets, rendering it a mere shell corporation, because White Plains Development never owned the Property, and in any event, the Property is currently owned by 440 Hamilton Owner LLC.

57.     Upon information and belief, Wexler, who executed the Location Agreement on behalf of White Plains Development, deliberately concealed the true owners of the Property at the time the Location Agreement was signed and used the White Plains Development corporate entity to commit fraud and unlawfully abscond with Fox's Security Deposit.  By representing that White Plains Development owned Property that was in fact owned by two other corporate entities (Equity I and Equity II), Wexler facilitated his theft of Fox's Security Deposit by increasing the difficulty of Fox's recovering the money it is owed.

58.     Wexler is not entitled to hide behind the corporate form as a means to steal.   This Court should pierce the corporate veil of White Plains Development and hold Wexler and any other owners of White Plains Development personally liable for the damages Fox has incurred.

-

## FIRST CLAIM
**Breach of Contract (Against Defendants)**

59.     Fox repeats and re-alleges paragraphs 1 through 58, inclusive, with the same force and effect as if stated in full herein.

60.     Fox complied with of its obligations under the Location Agreement, including its obligation to complete filming at the Property by June 30, 2017 and vacate the Property by July 31, 2017.

61.     Under the Location Agreement, Defendants were obligated either to: (i) return Fox's Security Deposit within five days of Fox's vacating the Property; or (ii) provide Fox with a Property Damage Claim within 48 hours of Fox's vacating the Property.

62.     Defendants failed to comply with either obligation.

63.     By wrongfully withholding Fox's Security Deposit, Defendants have materially breached the Location Agreement.

64.     As a result of this wrongful conduct by Defendants, Fox has sustained loss, injury, and damages and is therefore entitled to an award of damages in an amount to be determined at trial, but not less than $100,000, plus interest thereon to the date of entry of judgment.

## SECOND CLAIM
**Breach of Contract (Against Defendants)**

65.     Fox repeats and re-alleges paragraphs 1 through 64, inclusive, with the same force and effect as if stated in full herein.

66.     Fox complied with of its obligations under the Location Agreement.

67.     In entering into the Location Agreement, Defendants warranted that White Plains Development was the "sole and exclusive legal owner of the Property and ha[d] full right, power and authority to grant Fox the rights granted to Fox hereunder."

-

68.    There are no public records establishing that White Plains Development owned the Property at the time the Location Agreement was executed or anytime thereafter.

69.    There are public records establishing that two other entities – Equity I and Equity II – owned the Property at the time the Location Agreement was executed.

70.    Defendants are in breach of the express warranty that White Plains Development was the "sole and exclusive legal owner of the Property" at the time the Location Agreement was executed.

71.    As a result of this wrongful conduct by Defendants, Fox has sustained loss, injury, and damages and is therefore entitled to an award of damages in an amount to be determined at trial, but not less than $100,000, plus interest thereon to the date of entry of judgment.

**THIRD CLAIM**
**Fraud (Against Wexler and John and Jane Does 1-10)**

72.    Fox repeats and re-alleges paragraphs 1 through 71, inclusive, with the same force and effect as if stated in full herein.

73.    Separate from its violation of its contractual obligations, Wexler and John and Jane Does 1-10 knowingly and intentionally made materially false statements regarding its ownership of the Property, intending to induce Fox to enter into the Location Agreement and pay Defendants $300,000, plus the Security Deposit in the amount of $100,000.

74.    As alleged herein, Wexler and John and Jane Does 1-10 falsely represented that White Plains Development owned the Property, inducing Fox to execute the Location Agreement with White Plains Development as the counter-party.

75.    As alleged herein, Wexler and John and Jane Does 1-10 knew at the time they leased the Property to Fox that this representation was false.  Fox was defrauded by Wexler and John and Jane Does 1-10 because Fox was induced to contract for use of the Property and disburse

14

-

monies, including the Security Deposit, in accordance with the Location Agreement, in reliance on the knowingly false representations of Wexler and John and Jane Does 1-10.  Had Fox known that White Plains Development did not in fact own the Property, Fox never would have executed the Location Agreement with White Plains Development and paid White Plains Development monies under this contract.

76.     As a result of the fraudulent conduct of Wexler and John and Jane Does 1-10, Fox has suffered damages in an amount to be determined, but not less than $100,000, plus interest thereon to the date of entry of judgment.

77.     In conducting itself in the manner alleged herein and in committing the acts alleged herein, Wexler and John and Jane Does 1-10 have acted maliciously and willfully, with the intent to injure and oppress Fox, and are guilty of a wanton disregard of the rights of Fox.  By reason thereof, Fox is entitled to exemplary damages against Wexler and John and Jane Does 1-10, in an amount to be determined at trial.

## FOURTH CLAIM
**Fraudulent Transfer Pursuant to New York Debtor and Creditor Law §§ 276, 276-a, 278 and/or 279 (Against Wexler and John and Jane Does 1-10)**

78.     Fox repeats and re-alleges paragraphs 1 through 77, inclusive, with the same force and effect as if stated in full herein.

79.     At the time Wexler and John and Jane Does 1-10 transferred the Security Deposit out of White Plains Development, they knew that Fox was demanding full return of the Security Deposit and they intended to defeat any judgment Fox might later obtain.

80.     The Conveyance was a conveyance as defined under New York Debtor and Creditor Law ("DCL") § 270.

81.     The Conveyance was made with actual intent to hinder, delay or defraud Fox.

-

82.     The Conveyance was made without consideration leaving White Plains Development insolvent and unable to pay its creditors.

83.     Wexler and John and Jane Does 1-10 made the Conveyance for their own self-enrichment and in furtherance of a scheme to defraud Fox by transferring ownership of the Security Deposit in violation of § 276.

84.     As a result, pursuant to DCL §§ 276, 276-a, 278 and/or 279, Fox is entitled to a judgment against Wexler and John and Jane Does 1-10: (a) avoiding the fraudulent transfers and preserving the property transferred, (b) recovering the value of the fraudulent transfers from Wexler and John and Jane Does 1-10; and (c) awarding Fox its reasonable attorney's fees as permitted by § 276-a.

### FIFTH CLAIM
**Breach of Fiduciary Duty Pursuant to New York General Obligations Law § 7-103**
**(Against Defendants)**

85.     Fox repeats and re-alleges paragraphs 1 through 84, inclusive, with the same force and effect as if stated in full herein.

86.     On information and belief, the Security Deposit deposited by Fox with White Plains Development was deposited by Defendants with a banking organization.

87.     On information and belief, the Security Deposit deposited by Fox with White Plains Development was mingled with the personal monies of the Defendants.

88.     Defendants failed to notify Fox in writing of the name and address of the banking organization with which the Security Deposit was deposited.

89.     Upon information and belief, the Security Deposit was deposited in an interest-bearing account.

90.     Defendants have failed to pay interest earned to Fox.

-

91.     By reason of the foregoing, Defendants have breached their fiduciary duties as created by N.Y. General Obligations Law ("GOL") § 7-103.

92.     As a result of this wrongful conduct by Defendants, Fox has sustained loss, injury, and damages and is therefore entitled to an accounting of the funds held in trust on its behalf and the interest generated thereon and a return of those funds to Fox with interest in accordance with GOL § 7-103, and in the event those funds have been transferred, expended or otherwise consumed, Fox is entitled to an award of damages in an amount to be determined at trial, but not less than $100,000, plus interest thereon to the date of entry of judgment.

93.     In conducting itself in the manner alleged herein and in committing the acts alleged herein, Defendants have acted maliciously and willfully, with the intent to injure and oppress Fox, and are guilty of a wanton disregard of the rights of Fox.  By reason thereof, Fox is entitled to exemplary damages against Defendants in an amount to be determined at trial.

## SIXTH CLAIM
### Money Had and Received (Against Defendants)

94.     Fox repeats and re-alleges paragraphs 1 through 93, inclusive, with the same force and effect as if stated in full herein.

95.     As the foregoing demonstrates, Defendants owe Fox $100,000 for money had and received from Fox on or about March 30, 2017, which money was to be returned by Defendants to Fox within five days after Fox vacated the Property in accordance with the Location Agreement.

96.     Defendants have failed to return Fox's Security Deposit or comply with the procedure prescribed by the Location Agreement for deducting any portion of the Security Deposit.

-

97.     As a result of this wrongful conduct by Defendants, Fox has sustained loss, injury, and damages and is therefore entitled to an award of damages in an amount to be determined at trial, but not less than $100,000, plus interest thereon to the date of entry of judgment.

-

## SEVENTH CLAIM
### Unjust Enrichment (Against Defendants)

98.    Fox repeats and re-alleges paragraphs 1 through 97, inclusive, with the same force and effect as if stated in full herein.

99.    Based on Defendants' failure to return Fox's Security Deposit, Defendants have been unjustly enriched in the amount of $100,000.

100.    As a result of this wrongful conduct by Defendants, Fox has sustained loss, injury, and damages and is therefore entitled to an award of damages in an amount to be determined at trial, but not less than $100,000, plus interest thereon to the date of entry of judgment.

**WHEREFORE**, Fox demands judgment in its favor and against Defendants, as follows:

A.    On the First Claim, against Defendants for breach of contract, damages in an amount to be determined, but not less than $100,000, plus interest thereon to the date of entry of judgment;

B.    On the Second Claim, against Defendants for breach of contract, damages in an amount to be determined, but not less than $100,000, plus interest thereon to the date of entry of judgment;

C.    On the Third Claim, against Wexler and John and Jane Does 1-10 for fraud, damages in an amount to be determined, but not less than $100,00, plus interest thereon to the date of entry of judgment, together with exemplary damages in an amount to be determined at trial;

D.    On the Fourth Claim, against Wexler and John and Jane Does 1-10, an order avoiding the fraudulent transfer and preserving the property transferred, and recovering the value of the fraudulent transfer from Wexler and John and Jane Does 1-10, and an award of Fox's attorneys' fees and costs incurred in connection with this action, in an amount to be determined at trial;

-

E.      On the Fifth Claim, against Defendants for breach of fiduciary duty pursuant to GOL § 7-103, an accounting of the funds held in trust on Fox's behalf, plus damages in an amount to be determined, but not less than $100,000, plus interest thereon to the date of entry of judgment, together with exemplary damages in an amount to be determined at trial;

F.      On the Sixth Claim, against Defendants for monies had and received, damages in an amount to be determined, but not less than $100,000, plus interest thereon to the date of entry of judgment;

G.      On the Seventh Claim, against Defendants for unjust enrichment, damages in an amount to be determined, but not less than $100,000, plus interest thereon to the date of entry of judgment;

H.      Together with an award of costs and attorneys' fees and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
          September 27, 2018

                                      LOEB & LOEB LLP

                                      By:  */s/ Jonathan Zavin*
                                            Jonathan Zavin
                                            Sara A. Slavin
                                            345 Park Avenue
                                            New York, New York 10154
                                            (212) 407-4000

                                      *Attorneys for Plaintiff Twentieth Century Fox Film Corporation*